UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose BARRAGAN–CEPEDA,
Defendant–Appellant.

No. 93–50642.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1994.

Decided July 12, 1994.

Karen Sue Berg, Asst. Federal Public Defender, San Diego, CA, for defendant-appellant.

Thomas W. McNamara, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: FLETCHER, CANBY, and HALL, Circuit Judges.

CANBY, Circuit Judge:

Jose Barragan–Cepeda was charged as a deported alien who reentered the United States in violation of 8 U.S.C. § 1326. Following the district court's denial of his motion to dismiss on the ground of double jeopardy, Barragan brings an interlocutory appeal. We reverse.

## I. BACKGROUND

In April of 1993, the government indicted Barragan alleging that he was an alien who

reentered the United States after deportation in violation of 8 U.S.C. § 1326. Barragan moved to dismiss the indictment because it subjected him to double jeopardy. The basis of his motion was as follows: In 1980, Barragan was indicted, tried and acquitted of a violation of § 1326 and two other offenses. Each of the 1980 offenses required the government to establish that Barragan was an alien. The 1980 acquittals, he alleges, were based on the fact that the jury found him to be an American citizen. Although the present charge is based on his April 9, 1993 reentry into the United States, Barragan argues that the government is barred from relitigating a key element, i.e., his alienage.

As proof that his alienage was litigated and decided in the 1980 proceeding, Barragan introduced affidavits from two people who served as jurors in the 1980 trial. The district court ruled that the introduction of these affidavits was improper under Fed. R.Evid. 606(b) and apparently declined to consider them. Barragan also introduced an affidavit from his 1980 defense counsel and a stipulation that was filed prior to trial in the 1980 proceeding.

The district court denied Barragan's motion, ruling that Barragan had failed to establish that his alienage was necessarily decided in the 1980 proceeding. Barragan now appeals both the conclusion that the juror affidavits were inadmissible and the finding that he failed to prove that the alienage issue was necessarily decided.

## II.  JUROR AFFIDAVITS

As a preliminary matter, we must decide whether the affidavits by jurors in the 1980 proceeding may properly be considered in the collateral estoppel inquiry. The district court ruled, and the government argues, that Rule 606(b) bars the admission of the juror affidavits to determine whether collateral estoppel applies in this case.

█ The full text of Rule 606(b) is as follows:

*Upon an inquiry into the validity of a verdict or indictment,* a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

(Emphasis added). The opening clause of this rule is clear. Rule 606(b) bars the admission of juror testimony only upon an inquiry into "the validity of a verdict." It does not limit the admissibility of juror affidavits to determine what issues were decided in a prior proceeding. By proffering jury affidavits regarding the 1980 verdict, Barragan has not sought to impeach that verdict. Quite the contrary, he is attempting to rely upon that verdict. Thus, the district court erred in ruling that the juror affidavits were inadmissible under Rule 606(b).

## III.  APPLICATION OF COLLATERAL ESTOPPEL

We must now determine whether these affidavits and the additional evidence put forth by Barragan entitle him to collateral estoppel on the alienage issue.

█ "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). This principle, collateral estoppel, is embodied in the Fifth Amendment's proscription against double jeopardy. *Id.* at 445, 90 S.Ct. at 1195. In determining whether collateral estoppel applies, we must determine: first, whether the issues are sufficiently similar; second, whether the issue was fully litigated in the first action; and, third, whether the issue was necessarily decided in

that action. *United States v. Crooks,* 804 F.2d 1441, 1446 (9th Cir.1986).

▮ Both in this case and in the 1980 prosecution, the government alleged that Barragan was an alien who reentered the United States after a prior deportation in violation of 8 U.S.C. § 1326. The elements of this offense are undisputed. The defendant must be an alien; he must have been deported; and he must have thereafter reentered the United States without permission. *United States v. Meza–Soria,* 935 F.2d 166, 168 (9th Cir.1991). Barragan argues that the government may not relitigate the first element, whether he is an alien.

▮ Two of the *Crooks* requirements for collateral estoppel are met; the issues are identical and they were actually litigated. The only issue is whether alienage was "necessarily decided" in 1980. To decide this question, *Ashe* counsels this court to

> examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.

397 U.S. at 444, 90 S.Ct. at 1194 (citations omitted).

Due to the age of the earlier proceeding, the record is not available. However, Barragan introduced the following evidence: a stipulation in the 1980 case in which Barragan effectively removed from dispute the other two elements of the reentry after deportation offense, an affidavit signed by his 1980 defense counsel who vouches that the sole issue in that proceeding was Barragan's alienage, and the affidavits, discussed previously, by two of the 1980 jurors, asserting that the basis for the 1980 jury's acquittals was the jury's belief that Barragan was a United States citizen.

This evidence establishes that Barragan's citizenship was the basis for the acquittals. In the 1980 stipulation, Barragan admitted, among other things, the following:

> 21. On December 1, 1978, Jose Barragan–Cepeda was formally deported from the United States, at the Port of San Ysidro, to Mexico. Mr. Barragan was personally served with Form I294 which informed Mr. Barragan that following his deportation and before returning to the United States, he was required to obtain permission to reenter the United States;

Barragan's agreement to this stipulation effectively removed from the jury's consideration the fact of a prior deportation, the second of the three elements of unlawful reentry after deportation.

Barragan also stipulated:

> 24. That after a diligent search of the records of the Department of Justice, Immigration and Naturalization Service, no record was found to exist in the records of the Immigration and Naturalization Service evidencing the filing of an application for permission to reapply for admission to the United States after deportation, or the granting of such permission, relating to Jose Barragan–Cepeda, also known as Joseph Chariez–Cepeda, born July 25, 1957, or July 24, 1958, in Ensenada, B.C. Mexico, or in Mexico.

This stipulation does not foreclose any possible inquiry into the third element, i.e., whether Barragan had permission to reenter the country. However, the fact that he was willing to make the stipulation is strong evidence that this element was not disputed. If Barragan was defending on the ground that he had permission to reenter the United States, he would have had no reason to make the stipulation. After all, it is the government's burden to prove the elements of the offense. Barragan could not have been penalized for refusing to make the stipulation because he had no basis for knowing whether the government had taken the actions to which he stipulated.

The circumstantial evidence in the stipulation is supported by the juror affidavits and the defense counsel affidavit. The government has offered no evidence to contradict any of this evidence. In light of the uncontroverted evidence, Barragan has established that the issue was necessarily decided in his

favor by the 1980 acquittal and the district court clearly erred in finding otherwise.

■ The government argues that, even so, Barragan is not entitled to collateral estoppel. The government cites two 1978 criminal proceedings in which he admitted being a Mexican citizen and pleaded guilty to illegal entry. In fact, the government argues, the 1978 proceeding should have collaterally estopped Barragan from litigating alienage in 1980. The 1980 proceeding is not subject to collateral attack now, however.[1] And it is arguably more reliable than the 1978 guilty pleas because it was the product of a jury trial in which the issue was vigorously litigated.

■ The government also asserts that Barragan admitted being a Mexican citizen in immigration proceedings both before and after the 1980 proceeding. Barragan's admissions in deportation proceedings prior to the 1980 trial, however, were available to the jury in the 1980 case. Indeed, Barragan stipulated to those admissions. Although the government has made assertions about deportation proceedings since 1980 in which Barragan has admitted Mexican citizenship, it has provided no evidence of these admissions.

We recognize that this is an interlocutory appeal and that the government should not be required to prove its case twice. But when a defendant has filed a motion to dismiss supported by sufficient evidence to grant that motion, the government may not defeat the motion with bald assertions. It must provide evidence. Here, the government has not done so.

Because the evidence clearly indicates that the alienage issue was necessarily decided in 1980, the government is collaterally estopped from relitigating the issue. Because alienage is a necessary element of the offense with which Barragan is charged, the indictment must be dismissed. The judgment of the

district court is reversed and the district court is instructed to dismiss the indictment.

REVERSED and REMANDED.

---

**1.** After his 1980 acquittal, Barragan was indicted for making false declarations before a court, *see* 18 U.S.C. § 1623(a), (c), because of declarations made at trial that were inconsistent with his declarations made in a prior deportation proceeding. He pleaded guilty to one count of the indictment, charging inconsistent declarations as to the residency of his family members; those declarations did not relate to his own birthplace.